The first listed one, which is Terwilliger v. Reyna, and we'll hear first from Mr. Brent, but I want to start off by saying, please make sure that your phones are muted during this argument. I hope you will realize that we have the same rules as if we're in court, which is to say no recording, visual or audio of this presentation. The audio will be available through the court tomorrow. And finally, we've read your briefs and the record excerpt. We have maybe not read the entire record in this case. So we appreciate your record references. And with that, I think that's it. Oh, yes. And we'll give each counsel. Well, in Mr. Reyna's and Stroman's case, how about three minutes each without questions? And then five minutes for Mr. Tittle for rebuttal without questions. And then because of the difficulties of transmission, then you're open to questions. Mr. Brent. Thank you, Your Honor. May it please the court. Tom Brandt for Abel Reyna, the former district attorney of McLennan County. On May 17th, 2015, all hell broke loose in Waco, Texas. The battle at Twin Peaks involved mayhem, multiple murders, and two warring groups who were heavily armed and were prepared for battle. 192 people, including the plaintiffs, were arrested that day in the aftermath of the violence and the violent confrontation between the rival gangs, which resulted in nine deaths and multiple serious injuries. There are three critical, important issues that I want to bring to the court's attention today. The first two, because of the limited time, I'll be addressing the first two and Mr. McKenzie will be addressing the third. But these are the three issues. The first issue involves probable cause, specifically how probable cause is applied in multi-suspect cases. We think the law is far from clear in this area, giving qualified immunity to Reyna and others. The second item of serious concern is the plaintiff's Frank's claim and whether it was clearly established that Abel would rise to a Frank's claim. And then the third item that Mr. McKenzie will develop more fully focuses on the plaintiff's factual allegations in this case. Since this comes to the court on motions to dismiss, he will focus on, are the factual allegations sufficient to overcome qualified immunity? Are they conclusory? Are they immaterial? And in fact, do the plaintiff's claim meet the finding of probable cause in this case? Again, the setting is the battle at Twin Peaks, multiple suspects and two warring groups and clear criminal conduct by members of those groups. We believe that Abel Reyna is entitled to qualified immunity from all the claims that are brought against him, including the ones that are surviving to this court. Reason it begins is fundamental. He did not arrest anyone, nor did he cause anyone to be arrested. His conduct did not violate any clearly established law. According to the plaintiff's own pleadings, the plaintiffs were arrested by Waco Police Department and not by Reyna. Brent Stroman, the former chief of police of the city of Waco testified, and this testimony was referred to in the plaintiff's complaint, that the hearing that the plaintiff refers to is where Stroman testified that he made the decision to make arrests that day. Well, what did Reyna do? Reyna is entitled to clearly established, Reyna is entitled to qualified immunity because his conduct did not violate clearly established law. First, the issue of probable cause, general statements about that, that to orient. Counsel, I think your time allows for questions. So you aren't pressing that your client had That is something that I've mentioned in the brief, but I'm not focusing on today because I think the lower hanging fruit is qualified immunity. But they did plead themselves into a situation where he's entitled to prosecutorial absolute immunity. So I'm not waiving that at all. But are you familiar with our case in July, Wooten versus Roach? Yes, your honor. But I do think that this is distinguishable from Wooten. But I'm focusing primarily on the qualified immunity. But I do think what they what Mr. Tittle pled in his complaint had to do with saying that these decisions were all made by in his prosecutorial capacity. So that's why we know I'll tell you how I look at the case with your client just quickly. It's to me that the law is pretty clearly established. You need probable cause. It has to be particularized, except in mass arrest cases, which in my mind might justify arresting on the day, but not three days later. And certainly you can never lie to a court to get a warrant. In this case, the district court focused on the last. And and, you know, I have some difficulty with the very thin affidavit and whether it makes an untruth. But wouldn't all that be irrelevant if our law doesn't attach Frank's liability to your client? Is that where you were going? And if that is that Melton case? Yes, that's the second point that I'm making, because looking carefully at the Frank's case law, we've come up with four at four times in which a person can be liable under Frank's if they are a the either provider. Let me look real quick. Under Frank's, you have to be either a signer of an affidavit. You have to present an affidavit. You have to provide false information, factual information, or you have to omit omit material information. So with respect to Raina, he did not do any of them. So what you have is a very vague allegation that Raina, quote, caused the affidavits to be presented. And that's just simply not not the case. It's it's there's no factual allegations that would support that he signed the affidavit. We know he didn't. That was Chavez. We know he didn't present it. And we know and we've developed this in the record where where Raina, all he did was provide legal advice in a general nature, saying that if you if a person meets these following elements, that person can be arrested, that he believed there would be probable cause. And so he sets out legal advice to the law enforcement. The law enforcement then interviews the people that are collected the hundred ninety two people and comes back with a recommendation to Chavez. On this point, if the incident occurred in 2015, but our Embankment Court in Melton was twenty seventeen, what's the case that would give fair notice to people like Raina that even prepare, you know, preparing, giving information for the purpose of ending up in a war? I believe you're absolutely correct that that would not give fair You can't give Raina and no one in a public official's position is expected to anticipate rulings that court would make. Clearly established law only operates in a backward capacity. And in fact, it can be described as unclear even after the acts are taking place. But you cannot clarify it after these acts and then and then import that clarification and apply it retrospectively, retroactively. So I think that so despite whatever the Fifth Circuit has said after 15, May 17, 2015, it would not clearly establish the law such as to give Raina adequate notice that his actions would make him liable. So he would be. I'm wrong. I understand that argument, and it's one our courts wrestled with. But I'm back on the point you said you were going to make at the outset, the first one, and I interrupted you. Mass arrest, relaxing of probable cause is a complex area. I would have thought that, yes, it would be relaxed to arrest people on the day for rioting. But it would not seem to me to apply three days later to rearrest somebody under 7102. Right. There's no exigency uncertainty. There's no cohesive mob moving. At that point, they've interviewed people and then they choose to submit an affidavit to rearrest. Well, but. But OK, with regard to the Terwilliger, that's that is a factual outlier. But I will address that factual outlier. Most of the people were arrested that day and charged. So with regard to the Terwilliger plaintiffs, they were they were dismissed from the scene. They came back to the scene. They were arrested on other charges, outstanding warrants, and then were charged later with the same thing every other person was charged with. All 192 people that were arrested, they were all charged with the same thing. So that was what was going on there. And the exigency of the situation had to do with the decisions that were being made at the time that the mayhem was understanding. I thought all the plaintiffs in front of us were arrested by virtue of a warrant built on an affidavit informing the court that they had been apprehended originally. But then they were released. No, no. That has to do with only the Terwilliger plaintiffs. All OK. But as to them, how would the mass arrest case law relax probable cause? Well, let me address, first of all, the mass arrest situation. It modifies the way probable cause is determined. The phrase particularized probable cause, we're not saying that doesn't apply. What we're saying is that you can apply it in a different way in a mass arrest. If you have a group of people who are who are clearly committing crimes and you do not have to have particularized probable cause as to each specific individual in order to say, as in this situation, the circumstances were the individuals were there. They were wearing identifiable symbols, their cuts, vests, badges, patches. They were there. And that presence with that identification with the warring factions was enough to to identify to establish probable cause. It doesn't. In the mass arrest cases, the courts have said, we think it's it's not it's a there's a debate going on about how specific you have to be as an officer to say, aha, I I didn't see you breaking that window or I didn't see you looting that store or torching that building, but you were with the people you were in identifiable in that group. Yes. Yes. To the extent that the Fifth Circuit has spoken on this, I believe both of those cases hardly provide clearly established law for this situation. Both of them are drug dealing in a bar, if I recall correctly, or alleged drug dealing. That's absolutely nine people killed in a total riot type situation. And it and at the very least, there's there ought to be, you know, probable cause is what a reasonable police officer would believe under the circumstances, is it not? Yes. And and the case for qualified immunity, vis a vis our other authorities is quite strong, it seems to me. I agree with you, Judge Jones. It is exactly the case that when when mayhem breaks out, the flexible notion of probable cause flexes. And just as the Supreme Court has indicated in Wesby and others in Maryland versus Pringle, the authority of the Fifth Circuit does not does not clearly establish what an officer or a DA is supposed to do in this precise situation. Well, I was thinking of a variation on Casablanca, round up the usual suspects. Well, well, this is not Casablanca. This is a situation where, where, where the Ricks bar has been overrun by two gangs. And so the French officer does arrest everyone because, because the bar is in ruins at that point. So what else? But it's not we are not talking about I'm not focused on the warrantless arrest at the time, the 197 or whatever. I'm focusing just on whether the court that issued the warrant. And I think this was the district court's focus was lied to, or because the court was told these are members of criminal street gangs. And then the definition of a criminal street gang was given. And yet it doesn't appear that that's a true statement. There's no evidence that they were members of either the Cossacks or the Bandidos. And my time is up. But what what happened was, as far as Raina was concerned, he did not participate in the information gathering and supplying to the court. Okay, that that I understand that as to Raina. Yes. Okay. And my time is now over. So I the rest of the time now goes to Mr. McKenzie. Yeah, Mr. McKenzie. May it please the court. My name is Alfred McKenzie, and it's my privilege to represent the city appellants in this interlocutory appeal today. As an interlocutory appeal, there's a single legal question before the court. And that is whether a given course of conduct would be objectively unreasonable in light of clearly established law. As Mr. Brandt indicated, I'm going to focus on the plaintiff's complaints in these five consolidated appeals. First, to overcome qualified immunity, the plaintiff's appellees must plead facts sufficient to establish a constitutional violation. In this case, the alleged arrest without probable cause. And second, the plaintiff's appellees complaints must demonstrate that the clearly established law at the time, in the unprecedented circumstances faced by the officers at Twin Peaks, was such that no reasonable officer could have believed that probable cause existed to arrest the plaintiffs for engaging in organized criminal activity. The ultimate question regarding probable cause is whether at the time the warrant affidavit was presented to the magistrate, any reasonable competent officer possessing the information the officers had could have concluded that a warrant should issue. Again, we rely upon the plaintiff's complaints at this stage of the proceeding. Based solely on the information in the plaintiff's complaints, this court should conclude that a reasonable officer with such information would believe that there was a fair probability that individuals present at Twin Peaks displaying the signs and symbols or colors of one of the rival gangs, the Banditos or Cossacks, were participating in a show of force in support of one of those gangs. And that from such participation, a reasonable officer could infer that the individual plaintiffs committed at least one overt act in furtherance of a conspiracy to commit capital murder, murder, or aggravated assault. Plaintiff's own complaint alleges the essence of probable cause. Quote, the plaintiffs were arrested based on their presence at Twin Peaks and investigators' reliance upon the motorcyclist's clothing and personal effect, such as key chains and bumper stickers, to determine membership in or affiliation with, end quote, the Banditos or the Cossacks. And this is the Rotin record. With five records, I've selected the Rotin record to point the court to various places in the plaintiff's complaints. They're all very similar. The Rotin record at 483, 484. So the plaintiff's theory of this case is that the district attorney selected criteria. Arrest the motorcyclist who are displaying gang colors of the Banditos or the Cossacks. The testimony from Sergeant Price, again included in the plaintiff's complaints, is that's what we did. The officers arrested not everyone at Twin Peaks, not everyone in the whole world, as the plaintiff suggested in the brief would be subject to this form affidavit. But the officers arrested those motorcyclists who were sporting gang colors. This court recently found in Jones v. Perez at 790 Fed Appendix 576, cited in our brief, that an arrest is reasonable when there is probable cause to believe that a criminal offense has been or is being committed, warrant or no warrant. It's the city appellant's position that the plaintiff's own complaint alleges sufficient facts that a reasonable officer could draw the two necessary elements from engaging in organized criminal activity under Chapter 71 of the Texas Penal Code. Membership in a criminal street gang, and I will address Judge Higginson's concern about evidence supporting that as pleaded by the plaintiffs, and participation in a conspiracy to commit one of the object offenses. As the Supreme Court instructed in Wesby, when considering probable cause, the court must consider the totality of the circumstances rather than review each fact individually. And second, the court should not dismiss outright circumstances that are susceptible of innocent explanation. So first, with regard to the totality of circumstances, what do the plaintiff's complaints allege? Mr. McKenzie, I'm just going to interrupt because I thought Judge Albright, although in a very tight paragraph, I thought he actually did conclude there was probable cause, that this is not a Mallory case. So if that's true, my focus has only been looking at paragraph four of the affidavit, that one sentence paragraph, which to me is not particularized to any plaintiff. Why isn't that violative of clearly established law, that you can't either omit exculpatory evidence or include false evidence? Your Honor, a couple of things. First, with regard to Judge Albright's order, I read it in a way that was difficult to reconcile. I didn't see the discussion about Mallory as finding probable cause, but certainly the way the Mallory complaint was dismissed, that would be a reasonable inference. If probable cause is established, the plaintiffs have no Fourth Amendment violation, period. You can't have a separate Franks violation. That's not a cause of action under 42 U.S.C. 1983. Well, what if probable cause is established because of a false statement that these plaintiffs were members of a criminal street gang, which it does sound like you're banditos. But as I understand the plaintiff's argument, the law enforcement, particularly Mr. Chavez, knew full well that these plaintiffs weren't members of those two warring gangs. It was more like they just pulled up or they were helping someone to the hospital, but it's contradictory to what was told to the court. A couple of things, Your Honor. There's a definition of criminal street gang under Chapter 71, and Your Honor, your reference to the Cossacks and the banditos. The criminal street gang is not the banditos in its formalized sense, card-carrying members of the banditos. The criminal street gang are all those people, or more carefully, a reasonable officer could believe that a member of one criminal street gang are all those people who arrive at the scene sporting banditos colors, whether they are members or otherwise supporting and answering the call to a show of force. I agree. So, but again, you're saying the record is only open to the conclusion that these plaintiffs, whether they were members or not, they had the colors of those two warring gangs. Your Honor, the plaintiffs have pleaded that. They pleaded that's why they were arrested, and they haven't denied it. And specifically, and this is going to the innocent explanations, and I'll come back to totality of circumstances. One of the allegations is, well, these individuals arrived on the scene wearing gang colors. The plaintiff's innocent allegation, innocent explanation is, well, all the clothing worn by the plaintiffs was completely lawful. This is record complaint at 504. Or much of the clothing, patches, and keychains signifying gang membership was readily available on the internet. This is in the complaint, Roten's 22. Those are those very innocent explanations that Wesby says, don't disregard the allegation of wearing criminal street gang colors because the officer, a reasonable officer, doesn't have to take those innocent explanations. It's immaterial. So, it's not a well-pleaded complaint to simply say everything we were wearing without even denying that indeed they supported one of the in and of itself. It's chapter 71 of the Texas Penal Code that makes that relevant and allows the officer to rely upon it. And so, yes, if there were a lie, and that's the question that Jones ultimately puts to it, is did the officer lie to the magistrate, and was that lie material to the determination of probable cause? If there were a lie that was necessary, there would be no probable cause. It's just logical, but there is no lie. I mean, they're filling in the blank, implying that they're all members of a criminal street gang that regularly commits murder and criminal activities. And yet, I thought at least one of the plaintiffs was sort of separated from the room with the Cossacks and the Bandidos because the police knew that he wasn't a member of theirs. And those gangs may, as we know from the decision that I was involved with recently, Bandidos and Portillo and Pike, those gangs did commit crimes of murder, but I thought these fellows were members of just other Texas biker gangs. Yeah? Your Honor, I can be a member of multiple organizations. And again, this is one of those immaterial, innocent explanations that the plaintiffs raised in their complaint. Many of them don't deny being members of the Bandidos or the Cossacks. Some of them don't. That's immaterial to whether they responded to a call for a show of force wearing the colors of the Bandidos and Cossacks. I'm sorry, I just got disconnected for about 15 seconds. Not my fault. Are we ready to go? Yeah, if you can start whatever your sentence was again. Sure. Judge Jones, I was referring to membership in a criminal street gang. A reasonable officer, the 10th Court of Appeals in Ex parte Pilkington, found that the magistrate and officer could infer from an individual's presence at the scene where nine people died and 20 were wounded membership in the criminal street gang because they were wearing the signs and symbols of the Bandidos and the Cossacks, or at least a reasonable officer could believe that. That's what the statute says. Was Pilkington this case or was it another case? No, he's not a party in this set of cases, but that is a Texas court in the criminal proceeding reviewing this very setting. And did you cite that in your brief? Yes. And in response to Judge Higginson's other question, it's not necessary that every member of the criminal street gang have been engaged in continuing criminal activity. That's how the gang is. Yeah, I understand that. May I ask one more question? Yes. There was only one criminal prosecution out of the entire incident, right? And that's what's his name, Casillas, or what was the fellow's name? I don't know the name. There was only one trial. That's right. And it resulted in a mistrial. And ultimately all of those were dismissed after many years of, I guess, ongoing prosecution in the criminal proceedings. Well, surely the people who killed people were prosecuted. Well, Your Honor, that's been my concern all along. No one was prosecuted. Someone was guilty. And that's why we have a bit of a disconnect between what really happened and the legal construct of these cases. Thank you. All right, sir. Mr. Tittle, your turn. Can you hear me? Yes, sir. Okay. Good morning, Your Honors. Thank you. And may it please the court. At the outset, I would say, Your Honor is correct. Someone was guilty. It just wasn't any of these people, nor was there any reasonable belief of probable cause that any of these in the three and a half years the cases were pending had anything to do with any of the violence, nor did they encourage it. It is flatly false that any of them admitted to being banditos or Cossacks, as Mr. McKenzie just said. That is completely false. That is nowhere to be found in our record. In fact, in the plaintiff's pleading, each of these individuals very expressly indicated that they were not members of any criminal street gang. They were small independent clubs. They were into vintage motorcycles. One group, another group was from Austin. They did some kind of charity work. These groups were what are called mom and pop clubs, meaning they have women and men. They're by definition not the type of, they are not the banditos or the Cossacks. These 37 individuals, as plainly pled in the complaint, they were not gang members. They did not answer any call. As the city suggests, they did not participate or encourage any of the violence. And in fact, when the violence occurred, their actions were to duck behind cars, run for cover. The city, in misconstruing Westby, even goes so far as to suggest that they don't have to accept that as a well pleaded fact because possibly someone was diving behind a car to get a better vantage point from which to shoot. That is a complete misconstruction or misapplication of Westby. And I'll address that more momentarily. But Westby ultimately stands for the, that law enforcement must look at the totality of the circumstances and they're not required to accept a suspect or a plaintiff's innocent explanation if it is not consistent with the totality of the circumstances they observed. That does not give law enforcement the license to completely ignore explanations in a plaintiff's well pleaded complaint that are completely consistent with the totality of the circumstances. And Westby is a motion for summary judgment case, not a 12B6 case. Let me say that while these defendants talk about a reasonable belief that they have of gang membership and involvement in a prearranged plan, in fact, with respect to these 37 individuals that make up this consolidated appeal, law enforcement had no information about them. It is flatly false that both Mr. Raina's lawyer and the city claim that these individuals were wearing gang colors. That is nowhere to be found in plaintiff's well pleaded complaint. I would just note that with Iqbal and Twombly, we're in a position of pleading numerous detailed facts. And when we do that, they then say we've admitted something or if we have failed to 12B6 motion, we've somehow admitted it. There is nothing in the plaintiff's well pleaded complaint that would even remotely allow an inference that they were wearing gang colors or that they answered a call. The reason that the defendants cling so closely to that narrative is because, as Judge Higginson pointed out, there is absolutely. Let me go back to the law just for a moment, please. You can see that in a Frank's claim that the presence of probable cause is not presented. If you otherwise have a Frank's claim that there is a defense that the officer otherwise would have had probable cause. That sounds like it's a Malik claim. That's a Malik claim. Now, you have the Jones opinion from our court, which is an unpublished opinion. And I don't know if you can see that point. Or if anybody can put me some cases off from other circuits. There is a Frank's law problem here. And what I'm hearing is probable cause. Now I understand that. But that also is a Malik claim. So I think I'd like to get some sorting out of that. Thank you, Your Honor. With respect to the Malik claim, the district court denied the motions to dismiss on the grounds that the affidavit at least facially states a Frank's claim. However, the language in the court order indicates that the suspect, it identified the charge. And there are several other facts that were related to the situation. If one looks at the probable cause affidavit, as Judge Higginson pointed out, there is one and only one paragraph that even purports to claim a fact about these individuals, the individuals named. And it is the paragraph that says after the altercation, the subject was and it is that paragraph. I won't continue reading it all. It is worth noting that is those are not articulable facts. That is simply a cut and paste straight from the penal code. But I mean, it to me, it is a very, very frustrating affidavit fill in the blank. To me, it doesn't seem justified by the exigency of the moment because it was done late later. I have two difficulties with your argument. One is if really that sentence, the deficiency is that it's a legal conclusion, then it isn't really a false operative fact. So the district court may have been mistaken that this meets probable cause. But I didn't see in the district court's order identifying any actual false operative fact because the affidavit is devoid of operative facts. What's the false fact, Your Honor? If if there is a fact alleged in this affidavit, it is only one of two or three statements. At the very beginning, it says so and so is a member of a criminal street gang that is at least arguably a fact. I will say it's important to note, Your Honor, the defendants both made the arguments at the district court level that that was a fact. They have since abandoned it and said, no, that's a conclusion of law. So if you strike that off, you get only to the paragraph you've mentioned, which is no, there are no facts. Yeah, but that paragraph, I mean, that paragraph also, it's from the definition section of 7102. So let's strike both as just legal conclusions. We're left with no facts as opposed to dishonest ones. And I know that seems like a trap for your clients, but it's been a difficulty for me with this case. I believe the court could certainly affirm the denial of the 12b6 motions on other grounds. We pled both Malley and Franks. The court simply said, if it's a Franks claim, which he believed it was, then by definition, Malley is mutually exclusive. So he just simply said, if it's a Franks claim, it can't be Malley. Ultimately, this affidavit does not state probable cause. It doesn't have any particularized facts whatsoever, not a single one. The lengthy, I'm just going to hold this up just because I know you're familiar with it, but just so I can point to the section I'm referring to, the lengthy narrative in the middle of the affidavit is literally just a newspaper article describing what happened. It has nothing to do with these plaintiffs. There could arguably be an implication that after describing the Cossacks and the Banditos and associates and brandishing weapons, that somehow the next paragraph must include that. What about the just general proposition that in 2015, police officers responding to this mayhem, they basically, the law on mass arrest just really isn't clearly established. Well, let me rephrase this specific question to you. Do you agree that they had warrantless PC to arrest everybody there at the time? It would seem to me that the law is not clearly established. They couldn't arrest everyone. If that's the case, then the only issue they lied about was that PC then dissipated as to these plaintiffs after that big, huge convention center time to discuss and segregate out people. Do you see where I'm going with that? Yes. And whether the illegal, we've not contended that the initial detention was illegal. They had a right to investigate this crime. It is completely contrary to all facts that we've pled that these were two warring factions that one of the fallacies of the county's argument is that everyone there is either on team A or team B. That is simply false. There is no, that is only necessary because they must have that scenario in order to create the totality of the circumstances in the manner that they want to. But a reasonable officer could have arrested everyone at the time, just because it was unclear who wasn't on A and B. But, but they then, then I thought the argument was they segregated them. They detained them. To me, that's a seizure. They would have needed probable cause, but whether we bicker over that word or not, then the affidavit does explain, it does tell the court, these members, these people were part of a criminal street gang. And we, and that would be the false statement, right? Judge Higginson, as to whether there was probable cause to arrest them initially, I would respectfully disagree. I think there was a reasonable suspicion to detain them for purposes of an investigation, but I don't believe even initially they could literally just throw a perimeter, throw a rope around the perimeter of a parking lot that's a quarter mile or half a mile wide and simply arrest everyone, even on the spot. But what we're- Mr. Tittle, what's your best authority for the idea that the police operating on the scene of a mass incident with shooting nine people killed, what's your best authority for the idea that the police have to spy out each individual before they can arrest them? Well, sure, Your Honor. Thank you. The, the authority on that, first of all, the arrests were not made until at least half a day later, 12 hours. Well, as I understood it, what they, I mean, I thought your pleading said this, they rounded them up and they took them in buses to the convention center and then they were there overnight practically while each one was being interviewed. Isn't that sort of what happened? It is, it is accurate that they were investigating it and people were being let go and members of the Waco Police Department believed there was not probable cause until, as we've alleged, Mr. Reyna entered the picture late that evening and he orchestrated the mass arrest theory. It was his idea of which there was opposition from Waco Police Department members. He had to persuade the chief of police to agree with him on that. So I'll come back in a minute to addressing some of the points that Mr. Brandt made, but to answer your question, Judge Jones, the best authority that they cannot use to investigate a mass incident is everything from Ibarra to Pringle to the cases we've cited in our brief. The fact that it is a crime scene where there are multiple victims does not relax the standard. There's not a different particularized probable cause standard. It is particularized probable cause. And if, as- You don't acknowledge that other circuits seem to have held to the contrary? I don't believe that any circuit has held to the contrary except in the Callahan case, which I believe is the 10th circuit, and that case is distinguishable. In case after case, even in the riot cases that are cited by Mr. Brandt, those courts do not just eliminate the need for particularized probable cause. They simply say the group was acting as a chanting. They were an individual, and therefore there was particularized probable cause against each one. It is completely false narrative that the county is suggesting that everyone at this location was acting in a group or multiple group capacity. But don't you have to agree that it is not, as Judge Higginson said earlier, it is not I do not respectfully- I do not agree with that, and I don't know that that's what- There's no Supreme Court case that says that. Your Honor, with respect to the clearly established question, if the officer presented a facially deficient warrant that did not have probable cause for the purpose of obtaining an arrest warrant, the clearly established question is the underlying facts, and Malley says exactly that, and recently this court in Curtis v. Mayfield or Mayfield v. Curtis recently held exactly that. The violation, in fact, Malley itself says you do not have qualified immunity if you present a facially deficient warrant. Likewise, in a Frank's case, as we've alleged and as the district court believed this was, if we have alleged a Frank's case, the question of clearly established is Frank's itself, and I would read, Your Honor, this line from this court in Winfrey v. Rogers recently in which the court addressed this exact question in a Frank's case. Here, the clearly established constitutional right asserted by the individual's name is Junior is to be free from police arrest without a good faith showing a probable cause. Since Frank's v. Delaware, it has been clearly established that defendant's Fourth Amendment rights are violated if the affiant in support of the warrant includes a false statement knowingly and intentionally or with reckless disregard for the truth. Well, now wait, now Frank's, I mean, I'm quite familiar with Winfrey and the facts there are utterly and completely distinct, and again, I thought we had moved off the Frank's issue and we were talking about whether the police had the authority to detain people and then charge them based on what they had witnessed at the scene. Your Honor, my understanding of your question was whether it would be clearly established that it would be that their conduct would be violative of the plaintiff's constitutional rights. If arrest warrants were presented for each of these people that lack particularized probable cause to the extent that it did not have, that it simply did not state probable cause, it was a Malley violation, the law is clearly established by Malley itself and that is the holding of the Fifth Circuit, the Supreme Court, and the Fifth Circuit, and you do not, we do not need to look at as the defendant qualified immunity. You've played around qualified immunity. What's your It is clearly established if it is a facially deficient warrant and Curtis B Mayfield recently within the last- I'm asking, we're talking past each other and I won't belabor this anymore, but what I'm saying is without the warrant, we're not dealing with Frank's here. Okay, I'm sorry. Without the warrant, we're talking about the police who are on the scene when people are getting shot and killed and they arrest everybody or most of the, leave aside the Terwilliger plaintiffs, but all your, you've got 150 other plaintiffs, right? Waiting in the wings, but, and all these other cases here, they take them all to the convention center. They look at what they're wearing and they say, we have probable, you know, we, we had a reasonable officer could there was probable cause that these people are members of one or the other games. If the, if the defendants can prove your honor, that these people were wearing these clothing and that they had participated in a conspiracy to commit murder as they're charged, then certainly that would be proper for summary judgment. It is not, it is not in line with what we have pled. With respect to your question about the, a warrantless arrest, I respectfully disagree that the, just because there was a mass, there was a large scale incident that was fairly focalized into a specific area that you could go into a parking lot and start arresting every attendee. I would give as an example, what if any, what if just someone from Waco was there and they identified as a color of the, of one of the clubs, would the, would, would that, would they be allowed to stamp their name in there? If George W. Bush was on his way to Crawford and had stopped at Twin Peaks and was wearing a, an SMU pullover that was red, would that be a color that's associated? The problem with the affidavit, your honor, is that when you say the individual is at the scene wearing common signs and symbols, it is incumbent on the, the DA and the prosecutor to identify what those signs and symbols were and how they connect to the criminal street gangs. It is not enough to simply have a form affidavit that you say, it doesn't matter whose name we that is. If they don't, if in the, if when they're seeking the warrant, they don't tell the court what it seems like everyone's talking around, which is these people were somehow connected to the banditos to the Cossacks, team A or team B, then there's no PC, but they didn't actually assert it. So they didn't make the false operative statement. They just made this vague definitional extraction from 7102. You're, you're talking about with respect to the signs and symbols or gang membership, or just, but I know I'm repeating myself because I do think, and you disagree, but I don't think it's fatal, which whichever one's right. I do think that there's no clearly established law that they couldn't originally seize them and bring them to the convention center. My difficulty is that that isn't the premise of your 1983 claim. As I see it, your premise is that the police then lie by saying that these plaintiffs actually had a connection to these two criminal street gangs. Whereas in fact, as you've pled, they didn't. Yes. I didn't realize that we had a disagreement on the, whether there was clearly established that they could be initially detained. I think they could be initially detained. No, I'm saying seized. I'm saying arrested. I don't think they were free to leave that convention center. I may be wrong, but I don't want to take your time up because there's another big obstacle, at least that I see, which is Melton. Okay. Whatever the law about Melton was in 2015. Right. Wouldn't, wouldn't that mean there'd be difficulty not giving qualified immunity to anyone other than Chavez, the man who prepared, signed and drafted. Your honor, with respect to Melton, first of all, it's important to note Melton is one of those opinions. And I say this without knowing who the author is, so that's dangerous. But it's one of those opinions that is certainly very nuanced. And it was an attempt to reconcile a case called Jennings and a case called Hampton. And what the finding of Melton is, is that ultimately it did not establish, it did not say the law is clearly established as of this day. It says there never was a conflict in the law. That's what judge Elrod wrote for a majority. And judge Costa wrote a separate opinion saying, no, you can't pull it all together. The law just doesn't fit together, but either way, wouldn't it mean it wasn't clearly established for anyone who's just sort of taking photos and talking about it or saying arrest everyone that we've really, all our law has always required for Frank's liability that someone be aware what they're saying will end up in a warrant. I mean, in an affidavit for warrant. And if so, I don't see in your complaint that being asserted as to anyone except for Chavez. Okay. Well, with respect to Melton, I don't think that it does. I think it is saying that the law, it clearly establishes the law much further back than the date. And I guess that's what you're saying. The majority opinion sets it further back. Melton says any person is responsible, can be responsible under Frank's liability. If they participate in the preparation of the affidavit, it also says assisted in the preparation of the affidavit. But it says for the purpose of right. Doesn't it. It isn't just, if you were a secretary and you, as you know, added somewhere, it's really got to be knowing it's going to go to a court. I thought I may be wrong. I don't, I don't, I'm not saying I don't know that you are. And I'm simply saying that these individuals fit that definition. For example, Mr. Raina, Mr. Raina is the author, he either authored it or a DA, which we've alleged a DA at the scene would have authored it. The language is entirely penal code. It is not the language of a police officer. He, he masterminded the entire thing. He was on the scene. He called the meeting to establish this theory. He told everyone what the theory was going to be. The entire affidavit, it's a reasonable deduction from what we've pled or reasonable inference. It could not have come from anyone, but Mr. Raina, we believe he did either a assist in the preparation of it, or he simply provided the information that is who provided the information. Who else would have provided this information? I looked at focused for Raina. I focused on paragraph 63 and it does. I mean, I'm not a law enforcement officer, but it would seem that the DA might come and in the hysteria of the moment, say, you know, we're just going to arrest them all. And that, that, that could not get, I, I agree with you. That's not particularized PC, my own view, nor do I think it's justified under Pringle and mass arrest. But what you didn't allege is that in, in the preparation of the affidavit, it would in the calm of the moment be given to a court that an officer of the court relies on that early DA position was communicated through. See what I'm saying? I think Chavez then sat down with everything. He made the painstaking assessment of what's true and what's not. And he told the court what he told the court. Your honor, what Chavez, what we pled that Chavez said, and we even included a, that he, some of his testimony, he didn't know. He had no personal knowledge of anything in there. He denied that Mr. Raina claimed that they had talked and discussed whether he would, you know, tell the truth, make sure you tell the truth and squared all the things that are true. He says, I never talked with Raina. And we put that in there because there's a conflict there. Uh, it, uh, you know, it, uh, taking the facts as we've plattled, that would mean Mr. Raina is lying. The, uh, we've certainly alleged that each of the individuals, uh, participated in a conspiracy. We've also alleged bystander liability, where if they were aware of, uh, violations of, of individual civil rights arrest without probable cause, they would have an obligation and even supervisory liability, uh, with Mr. Raina and Mr. Stroman that Mr. Stroman ordered the arrest. And Mr. Kittle, I have a couple of background questions for you at this point. Uh, number one, uh, we have five cases before us that include what, something like three dozen plaintiffs or so. Is that right? Yes, your honor. But I assume this case is sort of a precursor for the fact that you filed cases for how many plaintiffs? 150. I believe there's about 120 total. And, but let me say this group of people are, go ahead. This group of people, these are unique. This is a unique sub category because none of these were indicted. The other group of people who had filed claims, and I believe the probable cause affidavit is equally lacking in probable cause for them. Their cases, the, the defendants, 12 B six motions were granted. Well, let me ask you a question. All right, fine. Let's go on. Uh, are you, uh, is it the premise of all of your lawsuits? So you are not representing a single member, not one of the Bandidos or the Cossacks. It is not, there's nothing in my pleadings that would indicate that I can recall that, but I can assert to the, I will represent the court that I do represent a member of the Cossacks or the Bandidos. Okay. And then the next question is how many people were involved in the fracas altogether? If there were, if there were, uh, it would be somewhere in the neighborhood of 20 might be an estimate. There's video. I mean, how many congregated at the, uh, you know, at that, um, cafe or whatever, your honor, it was, I, it was a legal gathering. It was not, it was, I'm just asking you a fact. How many? I don't know that it's in our pleading, but my assumption is it would be somewhere, uh, above 200, but about 200 in the two representing basically three quarters of all the people who were there. I do represent a number of the individuals that were there. That's all I was trying to figure out. I would say this. Each of these cases is an individual case. The irony of this whole case is that if there is anything, our pleadings have been attacked as being conclusory. Yet the great irony is that the only thing that is really conclusory is the affidavit. That's what caused the problem. If law enforcement chose to abandon an otherwise proper investigation to just have a arrest them all, let God sort them out strategy. Why does it, I don't, I don't think every one of these cases should stand and fall individually. And if the defendants can prove that an individual was a member of a criminal street gang, and he was participating in the violence, or he encouraged the violence, or he did something, then they would assert that in summary judgment motions, and they may or may not prevail. But at this stage of the simply a 12 B6, we have alleged numerous facts that would contradict the warring, the warring gang theory advanced by the city and the county. The fact that flash violence occurred does not in any way comport with the defendant's view that bikers descended on Waco as they call it in their totality of the circumstances. We have pled very clearly that it was a scheduled meeting of which people came from all over the state and they came to socialize that we are just simply not just because there was a tragic incident does not give law enforcement the opportunity to indiscriminately arrest people. And I'd like to just say one thing I noticed I have only a few seconds under the criteria arrested people based on a criteria that was extremely indiscriminate does not mean that we are saying that therefore we fit the criteria. That is the argument that I believe miss the city made that we somehow fit the criteria simply because we described. This is how little thought there was given to who was connected and not a bumper sticker here, a key chain there and you were sent to jail and charged with a first degree felony without any particularized probable cause. And I see that my time is up. All right. Thank you, sir. Thank you. Thank you. Two minutes, Mr. Brandt. Yes, your honor. In my two minutes, I'd like to address two things. One is that Mr. Tittle mentioned that he pled that Chavez never talked to Raina Chavez signed the of omitting or false information. He didn't. There is no pleading to suggest that Raina was involved in the investigation and production of factual material and submission of that to Chavez with the idea it was going to go to a court. There's nothing there. What you have is Raina provided legal advice about what he and his office believed Chapter 71 meant and how it could be applied in this situation. No investigation. There's no pleading that Raina or even any other days interviewed anyone. They just said, interview these people. If they meet these criteria, then we think you can have probable cause if they meet these criteria. So then law enforcement went out and addressed the criteria by doing their investigation and then filed the affidavit that Chavez signed. The law enforcement officers provided Chavez with information. He then signed and it went on from there. The second point is that Judge Jones, you asked a very good question to Mr. Tittle, and he never answered the question. And the reason he answered the question is because he can't. There is no case that establishes clearly that in this situation, that it's clearly established that you cannot arrest the people there, that there's no probable cause. There is no such case. Carr and others, Carr stated that it is a particularized probable cause to arrest a whole group, is established if the group has observed violating the law, even if specific unlawful acts cannot be ascribed to specific individuals. The law is not clearly established. Defendants, especially Raina, are entitled to qualified immunity. My time is out. Thank you very much. All right, sir. Mr. McKenzie, you have three minutes. You're muted. Yeah, you're back. Thank you, Judge Jones. Yes. Initially, I want to respond to my friend on the other side. I hope that what I said in the opening argument is that some of the plaintiffs did not deny that they were members of the Bandidos and the Cossacks, not that they admitted the converse. In any event, that's what I intended to say. In response to Mr. Tittle's argument that law enforcement had no information, which is included in the complaint, that's not a well-pleaded allegation because the complaint defies that conclusory claim. One, they don't allege any facts that they know that law enforcement have no information, but instead, the complaint alleges that there was video reviewed by officers and that hours of interviews were conducted at the convention center. Just to get the time right, the event is at noon, approximately noon at 12 peaks, and the first arrest warrant affidavits are approximately 10 o'clock, as pleaded by the plaintiff. So, those interviews are taking place over the course of hours. It is the same day rather than an overnight event or days later. Mr. McKenzie, your first clarification, I can go back and listen to the original oral argument. I thought many, many times, at least three, you said that it is acknowledged they had the colors of the Bandidos and the Cossacks, but if now what you're correcting that statement to be is that they didn't deny they were members, how is not denying you're a member of a criminal street gang equivalent to telling a court that they are members? That sounds to me like you've just made the Franks violation. No, and I'm not making that point. I'm not suggesting that they are. We're stuck with the plaintiff's complaint, and the plaintiff's complaint both fails to overcome qualified immunity and gives evidence of probable cause, and this is why I have to draw that distinction. Whether they're a member of the Bandidos-Cossacks is not the material question. The question is whether they're a member of a criminal street gang, and a reasonable officer can infer from the fact that they are wearing the signs and symbols of one of those gangs, whether they are a member or not, and that's the point I keep emphasizing. Well, you keep using the word gang, and that's the law under 71, but you read the Portillo-Pipe decision, correct? No, Your Honor. I'm not involved in the criminal side at all. That's the federal criminal case that Judge Albright held this for. These civil cases were stayed for years. These are not gangs. These are clubs. I'm just saying conclusively they're members of other gangs. Are you suggesting that every single motorcycle club, every member of every club that showed up for this meeting was, by showing up, it had created probable cause to charge them with the 7102 violation? Your Honor, no, and I understand Mr. Tittle is making that claim in the brief in an oral argument, but their complaint I don't read that way. The complaint actually does allege, Judge Jones, that hundreds of motorcyclists show up. The complaint alleges that criteria was applied so that only those that were displaying the signs and symbols of the Bandidos or Cossacks, and my point is it doesn't matter whether they're members of a club, only those that are wearing those signs and symbols then leads to a reasonable officer, and I see my time has expired. Is that correct? Answer the question. Yeah, so it leads a reasonable office to infer that they appeared as a member of a criminal street gang under Chapter 71 and they show us a port that is an act that gives rise to the conspiracy. Thank you. Thank you, all right, gentlemen, we have your argument. Thank you very much. We are in recess until tomorrow morning. Thank you.